Filed 3/22/13  P. v. Bledsoe CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JAMES ERNEST BLEDSOE,<br><br>    Defendant and Appellant. | G046411<br><br>(Super. Ct. No. 08WF0033)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael T. Murphy and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

James Ernest Bledsoe appeals from a judgment after a jury convicted him of numerous sexual offenses. Bledsoe argues the trial court erred in denying his request to represent himself. We disagree and affirm the judgment.

FACTS

*Tasha S.*

In December 2007, Bledsoe and Tasha went on a date and then back to Bledsoe's apartment. Bledsoe attempted to have sexual intercourse with Tasha, but she said, "[S]top" and "[N]o." Bledsoe pinned her down and put his penis inside her vagina. After Bledsoe raped her, Tasha yelled at Bledsoe, which upset him, and he threw her down and punched her in the stomach. Tasha eventually escaped and her parents called the police. The results of a sexual assault examination were consistent with Tasha having been raped, and semen taken from her vagina matched Bledsoe's DNA.

*Sara R.*

In October 2007, Bledsoe went on a date with Sara. The next thing Sara remembered, she woke up in her apartment wearing a man's boxer shorts and a T-shirt. Sara called Bledsoe and asked him whether they had sexual intercourse, and Bledsoe said they did not. Law enforcement officers subsequently showed Sara a videotape where Bledsoe was engaged in sexual acts with her. Sara did not remember any of what occurred on the video, and she did not consent to having sex with Bledsoe.

*Lana N.*

In July 2007, Bledsoe and Lana went on a number of dates together. During a few of those dates, Lana would not remember what had happened and she would wake up without any clothes on. Lana asked but Bledsoe denied they had sexual intercourse. Law enforcement officers subsequently showed Lana videotapes where Bledsoe engaged in sexual acts with her and on her. Lana did not remember the sexual acts she observed on the videotape, and she did not consent to having sex with Bledsoe.

2

*Holly H.*

In June 2007, Holly was at a bar when things started to get "really fuzzy" and she collapsed on the dance floor. The next thing she remembered, she was lying on a couch at the bar and Bledsoe, a man she had never met before, said he would give her a ride to a friend's house. Instead, Bledsoe took her to his apartment and made her a drink. Holly remembered she and Bledsoe were naked and Bledsoe was on top of her. Holly told Bledsoe she did not want to have sex with him because she was a virgin. She then felt pain in her vagina, and despite saying "'stop'" and "'no,'" Bledsoe continued. After Bledsoe had finished, Holly had a lot of blood coming from her vagina. She took a shower and left. Law enforcement officers subsequently showed Holly a videotape where Bledsoe was engaged in sexual acts with her and on her. Holly did not consent to having sex with Bledsoe.

The day after Bledsoe raped his last victim, law enforcement officers arrested him a stone's throw from the Mexican border with $2,000 in cash.

A second amended information charged Bledsoe with the following offenses: (1) Tasha S.-assault with intent to commit sexual offense (Pen. Code, § 220, subd. (a))[1] (count 1), forcible rape (§ 261, subd. (a)(2)) (count 2), forcible oral copulation (§ 288a, subd. (c)(2)) (count 3), misdemeanor secretly filming another with intent to arouse (§ 647, subd. (k)(2)) (count 4), resisting and obstructing an officer (§ 148, subd. (a)(1)) (count 5); (2) Sara R.-misdemeanor secretly filming another with intent to arouse (§ 647, subd. (k)(2)) (count 6), rape of intoxicated woman (§ 261, subd. (a)(3)) (count 7), rape of an unconscious woman (§ 261, subd. (a)(4)) (count 8); (3) Lana N.-rape of an intoxicated woman (§ 261, subd. (a)(3)) (count 9), rape of an unconscious woman (§ 261, subd. (a)(4)) (count 10), oral copulation of an unconscious person (§ 288a,

---

[1] All further statutory references are to the Penal Code.

subd. (f)) (count 11), oral copulation of intoxicated person (§ 288a, subd. (i)) (count 12), sexual penetration by foreign object of unconscious person (§ 289, subd. (d)) (count 13), sexual penetration by foreign object of intoxicated person (§ 289, subd. (e)) (count 14), misdemeanor secretly filming another with intent to arouse (§ 647, subd. (k)(2)) (count 15); (4) Holly H.-forcible rape (§ 261, subd. (a)(2)) (count 16), sexual penetration by foreign object by force (§ 289, subd. (a)(1)) (count 17), misdemeanor secretly filming another with intent to arouse (§ 647, subd. (k)(2)) (count 18); and (5) failure to register (§§ 290, subd. (b), 290.018, subd. (b)) (count 19). As to counts 2, 3, 16, and 17, the information alleged Bledsoe was a habitual sexual offender (§ 667.71, subd. (a)), he committed an offense against more than one victim (§ 667.61, subds. (b), (e)(5)), and he was not eligible for probation (§ 667.61, subds. (a), (d)(1)). The information also alleged Bledsoe suffered a prior strike conviction (§§ 667, subds. (d), (e)(1); 1170.12, subds. (b), (c)(1)), and a prior serious felony conviction (§ 667, subds. (a)(1)).

On September 15, 2011, the trial court denied Bledsoe's first motion to substitute his conflict counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). Bledsoe argued his defense counsel was ineffective because in part Bledsoe had not been shown any of the nearly 2,500 pages of discovery. Defense counsel indicated he was ready for trial, and the master calendar judge indicated the matter would be sent to a courtroom on Tuesday, September 20. Bledsoe stated he would be retaining private counsel. The judge indicated any private counsel needed to be present on September 20, and warned Bledsoe about requesting additional time because "this case is long in the tooth."

On September 20, private counsel appeared and explained he was requesting a short continuance to review the discovery and provide a retainer agreement to Bledsoe's mother, who he spoke with and wished to retain him. Bledsoe's conflict counsel stated he spoke with Bledsoe's mother the previous night and she did not intend

4

to retain private counsel; she asked him to review the case. The master calendar judge denied the request for a continuance and assigned the case to Judge John Conley.

That afternoon, Judge Conley indicated it was day five of 10. After discussing some scheduling issues, Bledsoe became very emotional. Bledsoe stated he did not want conflict counsel representing him and, "I would like to do it, if I have to go forward here." The trial court cleared the courtroom. After Bledsoe again expressed his displeasure with conflict counsel, conflict counsel advised the court of the case's procedural history and indicated he was "100 percent ready" to proceed. Bledsoe again expressed his concerns with conflict counsel, including that he had not been able to review the discovery, and stated, "If I have to go pro per and represent myself I feel more comfortable[.]" The court denied Bledsoe's second *Marsden* motion as untimely because it was so close to trial. Back on the record, Bledsoe's emotions overcame him, and the court continued the matter to the next day.

The next day, a Wednesday, and day two of trial, private counsel appeared and indicated Bledsoe had retained him. After the court indicated there were 2,700 pages of discovery to review, private counsel requested a three-month continuance. The prosecutor objected because it was a four-year-old case and it was day six of 10. The court denied Bledsoe's motion to substitute private counsel for his conflict counsel because the request was untimely.

Bledsoe moved to represent himself and indicated he could be ready for trial on Monday. The trial court inquired whether Bledsoe had reviewed the 2,700 pages of discovery. Bledsoe said he could. The court noted that the day before Bledsoe complained conflict counsel had not shared the discovery with him. Bledsoe assured the court he could review the information as he is "very good at reading[]" and his "vocabulary is excellent." When the court reminded Bledsoe this was a "life" case, Bledsoe replied, "And I think I would be open to that to save the court the time, save the people the pain."

5

Relying on the factors articulated in *People v. Windham* (1977) 19 Cal.3d 121 (*Windham*), the trial court denied Bledsoe's motion. The court reasoned that based on the court's experience conflict counsel was an excellent lawyer. The record reflects Bledsoe shook his head in the affirmative. The court noted Bledsoe did not have a proclivity for substituting counsel. When the court stated the reason for the request appeared to be Bledsoe believed he could do a better job than conflict counsel, Bledsoe replied he could "do an honest job[.]" The court stated not getting along with an attorney or not having confidence in an attorney was not sufficient grounds. The court stated the age of the case and the stage of the proceedings weighed against granting Bledsoe's request. And as to the disruption that would reasonably be expected to follow, the court did not believe Bledsoe would be prepared to proceed in five days considering the seriousness of the charges and the amount of discovery to review. Finally, citing *People v. Powell* (2011) 194 Cal.App.4th 1268 (*Powell*), the court explained the right of self-representation is not a license to abuse the judicial process and the court should rarely grant such a request on the day set for trial. Bledsoe proceeded to trial with counsel.

At trial, Bledsoe testified he had consensual sex with Tasha, Sara, and Lana. Bledsoe remembered Holly, but he had no recollection of that evening. The jury convicted Bledsoe on all the counts and found true all the allegations. The trial court sentenced Bledsoe to prison for a very, very long time: 100 years to life plus a 29-year determinate term for good measure.

DISCUSSION

Bledsoe argues the trial court erred when it denied his request to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). We disagree.

"'Criminal defendants have the right both to be represented by counsel at all critical stages of the prosecution and the right, based on the Sixth Amendment as interpreted in *Faretta, supra*, 422 U.S. 806, to represent themselves. [Citation.]

6

However, this right of self-representation is not a license to abuse the dignity of the courtroom or disrupt the proceedings. [Citation.] *Faretta* motions must be both timely and unequivocal. [Citations.] Equivocation of the right of self-representation may occur where the defendant tries to manipulate the proceedings by switching between requests for counsel and for self-representation, or where such actions are the product of whim or frustration.' [Citation.] Moreover, a trial court rarely should grant such a motion on the day set for trial. Our Supreme Court has 'held on numerous occasions that *Faretta* motions made on the eve of trial are untimely.' [Citation.] A motion made that close to the day set for trial is 'extreme' [citation] and now is disfavored [citations]." (*Powell, supra,* 194 Cal.App.4th at pp. 1277-1278.)

"Once the trial against a defendant has commenced, a *Faretta* motion for self-representation 'is addressed to the sound discretion of the trial court, which should consider such factors as the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay that might reasonably be expected to follow the granting of such a motion.' (*People v. Marshall* (1996) 13 Cal.4th 799, 827, . . . , relying on *Windham, supra,* 19 Cal.3d at p. 128 . . . .)" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1104-1105.)

Here, the trial court did not abuse its discretion in denying Bledsoe's *Faretta* motion. Indeed, it was certainly within the court's discretion to deny the motion, subject to it analyzing the request under the *Windham* factors, as it was made on day two of trial. (*People v. Clark* (1992) 3 Cal.4th 41, 99-100 [trial court discretion to deny motion for self-representation because it was made when trial date was being continued on day-to-day basis in effect on eve of trial].)

With respect to the factors articulated in *Windham,* we are convinced the trial court acted well within its discretion in denying Bledsoe's belated request to represent himself. The court opined that based on his experience, conflict counsel was "a

7

very competent lawyer." The record reflects Bledsoe agreed with the court's assessment of conflict counsel's skills as Bledsoe shook his head in agreement. Although the court noted Bledsoe did not have a proclivity for substituting counsel, his reasons for now wanting to represent himself were not a valid basis. (*People v. Berryman* (1993) 6 Cal.4th 1048, 1070, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1 [defendant's claimed lacked confidence in or inability to get along with insufficient basis to substitute counsel].) Thus, the record supports the conclusion Bledsoe had experienced trial counsel who planned to offer the best defense possible under the circumstances.

The court was particularly concerned with the age of the case as it was September 2011. The charged offenses occurred in 2007. The prosecutor filed the complaint in January 2008 and the original information in March 2009. The court's concern with the length and stage of the proceedings was proper as allowing Bledsoe to now represent himself on the eve of trial would have likely delayed the case further.

Finally, we address the last factor—the disruption or delay that might reasonably be expected to follow the granting of such a motion. This is the only factor Bledsoe discusses on appeal. He claims the trial court erred in denying his motion to represent himself because his request was not accompanied by a motion for a continuance. We disagree. First, Bledsoe did in fact request a continuance, although not as long as the three-month continuance private counsel requested. On the morning of Wednesday, September 21, Bledsoe moved to represent himself and indicated he could be ready to proceed on Monday. Thus, Bledsoe did request a short continuance to prepare for trial, and his reliance on cases where the defendant did not request a continuance is misplaced. (*In re Justin L.* (1987) 188 Cal.App.3d 1068, 1076-1077 [no request for continuance]; *People v. Herrera* (1980) 104 Cal.App.3d 167, 173-175 [same]; *People v. Tyner* (1977) 76 Cal.App.3d 352, 355 [same]; but see *People v. Perez* (1992) 4 Cal.App.4th 893, 903-904 [continuance necessary for defendant to prepare defense].)

8

Second, it was certainly reasonable for the trial court to be suspicious Bledsoe would be ready to proceed with trial on Monday. Bledsoe had previously complained conflict counsel had not shared any of the discovery with him. Despite Bledsoe's extraordinary reading skills, it would be difficult for a trained lawyer to review, organize, and synthesize 2,700 pages of discovery, some of it scientific discovery, and prepare a plausible defense strategy in less than five days. Although the court did not state it on the record, the court's obvious concern was that Monday morning Bledsoe would request additional time to review the discovery and prepare a defense. Considering the age of the case, allowing Bledsoe to represent himself would have likely resulted in further delays.

Bledsoe's reliance on federal authority holding any request to represent oneself before a jury is impaneled is timely is misplaced. The California Supreme Court rejected the federal rule, describing it as "too rigid in circumscribing the discretion of the trial court." (*People v. Burton* (1989) 48 Cal.3d 843, 854.) Therefore, the trial court properly denied Bledsoe's motion to represent himself made on the eve of trial.

## DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.

9